UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ELIZABETH WEIDNER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | CAUSE NO. 1:19CV249-PPS |

**OPINION AND ORDER**

Elizabeth Weidner applied for social security disability benefits at age 31, alleging that she had become disabled six years earlier at age 25. [DE 13 at 5.] She has a high school education and studied a year-and-a-half at a culinary school before dropping out. [AR at 20.][1] Prior to the alleged onset of disability, Weidner had spent 4½ years working as a cashier at McDonald's, the only job she has ever held. [AR at 46, 222-224.] An administrative law judge found that Weidner has a number of severe impairments: reported multiple site joint pain problems/arthralgias; reported low iron levels; mild to moderate obesity; bipolar disorder/depression, posttraumatic stress disorder, and anxiety complaints. [AR at 13.]

---

[1] The administrative record [AR] is found in the court record at docket entry 10, and consists of a total of 732 pages. I cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

Weidner's application was denied based on the ALJ's determination that she had the residual functional capacity to perform light work, subject to certain limitations, and that there are jobs in significant numbers in the national economy that Weidner can perform. [AR at 19, 27.] In this appeal, Weidner argues that reversal is required because the ALJ did not include all of Weidner's limitations in the residual functional capacity determination, failing to consider limitations from all medically determinable impairments, both severe and non-severe. [DE 13 at 14.]

## Discussion

My review of the Commissioner's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). The role of the courts is "extremely limited," and I am "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick*, 775 F.3d at 935, quoting *Schmidt v.*

*Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Weidner invokes sound legal principles. The regulations governing disability determinations clearly require that an ALJ consider evidence of non-severe impairments and any resulting limitations. 20 C.F.R. §404.1545(a)(1)- (3). The ALJ's assessment of residual functional capacity must take all limitations into account. *Id*. *See also Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (the ALJ must "consider the limitations imposed by all impairments, severe and non-severe"). Weidner cites *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). "In this circuit, 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.'" *Id.*, quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

Specifically, Weidner argues that the ALJ's RFC assessment and resulting hypothetical to the vocational expert "do not account for meaningful limitations in concentration, persistence, and pace." [DE 13 at 15.] The ALJ found that Weidner has moderate limitations in concentration, persistence or maintaining pace. [AR at 17.] In fashioning the RFC assessment, the ALJ included limitations "to understanding, carrying out and remembering simple instructions consistent with unskilled work," as well as "no sudden or unpredictable workplace changes in terms of use of work tools, work

3

processes, or work settings, and if there are workplace changes, they are introduced gradually" and "work that doesn't require satisfaction of strict or rigid production quotas or does not involve assembly-line pace work." [AR at 19.] The RFC also described Weidner as limited to "only superficial interactions with supervisors, coworkers, and the general public, defined as occasional and casual contact with no prolonged conversations and contact with supervisors [that] is short but allows the supervisors to give instructions." [*Id*.] All of these limitations were incorporated in the hypothetical posed to the vocational expert. [AR at 76.]

Rather than take a position on how the ALJ *should* have fashioned the RFC, given the findings of moderate limitations in concentration, persistence or pace, Weidner merely argues that the ALJ's description was insufficient, relying on *Yurt*. This type of argument is weaker than an argument that spells out what was inadequate about the description of the claimant's limitations. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.") In *Yurt*, reversal was required because the ALJ failed to present the vocational expert with the six areas of moderate limitation he found in the claimant's mental functioning, including deficiencies in concentration, persistence and pace. The Seventh Circuit applied its repeated rejection of "the notion that a hypothetical...confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Id*. at 858-59.

4

But since *Yurt*, courts have found RFC's and hypotheticals to be sufficient where they "adequately account for the claimant's demonstrated psychological symptoms," without reliance on generic and over-simplified limitations. *Jozefyk*, 923 F.3d at 498. *See also Saunders v. Saul*, 777 Fed.Appx. 821, 825-26 (7th Cir. 2019). The ALJ here avoided such over-simplification by detailed limitations addressing Weidner's inability to grasp complicated tasks or instructions, difficulty with sudden changes in how or where work is required to be performed, and her need to avoid demanding productivity quotas. Although Weidner challenges these as "insufficient under the *Yurt* standard," the argument is conclusory and unpersuasive. [DE 13 at 16.] A judicial reviewer accepts an ALJ's hypothetical where its formulation describing limitations in concentration, persistence or pace, in whatever words, succeeds in "'specifically exclud[ing] those tasks that someone with claimant's limitations would be unable to perform.'" *Saunders*, 777 Fed.Appx. at 825, quoting *O'Connor-Spinner v. Astrue*, 627 F.3d , 519 (7th Cir. 2010). Weidner does not show that the ALJ's formulation of the RFC failed to meet these requirements in describing her limitations in concentration, persistence and pace.

Beyond this argument, Weidner offers a laundry list of issues she contends the ALJ gave inadequate consideration to, including obesity, positive antinuclear antibodies or "ANA", and Weidner's heavy breathing and rocking behavior during the ALJ's hearing. [DE 13 at 17-18.] Rather than fail "to acknowledge or account for" these conditions, the ALJ's decision addresses each of them and offers an analysis of their limited impact on Weidner's functional abilities.

5

For instance, the ALJ found that the medical evidence relating to Weidner's slightly elevated ANA did not reflect or support any "significant limitations of function...for 12 months in duration." [AR at 14.]  The ALJ took into account the cumulative effects of Weidner's obesity and their contribution to the "disabling effects of the other impairments established by the record." [ AR at 14.]  The ALJ's decision expressly considers the lack of evidence indicating that Weidner uses an assistive device or has severe cardiovascular or respiratory impairments that might be impacted by obesity, or that Weidner has significant deficits in muscle strength. [AR at 23.]

Weidner's counsel made arguments to the ALJ concerning Weidner's heavy breathing and rocking back and forth during the hearing.  The ALJ reasonably observed that "there is no significant evidence that such behaviors were routinely documented within the record."  [AR at 25.]  Weidner now takes issue with that assessment, citing a therapist's observation that Weidner "continues to exhibit very childlike communication patterns and behaviors" and contending that her ongoing treatment results indicated that Weidner's symptoms and behavior interfered with her occupational functioning.   [DE 13 at 18, citing AR 472.]  The ALJ was well aware that Weidner had long-term treatment and therapy at the Northeastern Center for bipolar disorder and posttraumatic stress disorder.  [AR at 24.] The ALJ considered that "despite the claimant's reported social limitations, the evidence establishes that the claimant kept fairly regular appointments with Northeastern Center, where she routinely interacted with her therapist, and the evidence documents she also interacted with her case facilitator."  [AR at 24.]

The several hundred pages of medical records from this treatment contain references to improvements and successes as well as difficulties and setbacks. This breadth of findings is reflected in the ALJ's opinion, including observations that:

- mental status exams indicate Weidner had "a logical/coherent/goal directed thought process, normal thought content, a below average fund of knowledge/intellectual level at times, but also average knowledge/intelligence, no memory deficits, appropriate judgment, and intact insight" [AR at 16];

- Weidner was found to be "polite and cooperative," but did at various times exhibit "slowed/soft speech" or "normal rate/volume/spontaneity" of speech [AR at 17];

- Weidner's "ability to make eye contact improved throughout treatment" [AR at 17];

- "at times, the claimant had an attention/concentration problem, but at other times, her abilities to pay attention and concentrate were within normal limits" [AR at 25];

- "claimant was appropriately dressed, well groomed, with good hygiene, normal mood, was oriented to person/place/time/situation, had appropriate judgment, intact insight, average fund of knowledge/intelligence, normal attention/concentration, normal use of language, no memory deficits, was optimistic" and "identified/used coping strategies" and was able to identify her abilities [AR at 25].

All of this, as well as Northeastern Center documentation concerning instances of heavy breathing, slowed speech, normal speech and work on fidgeting, was taken into account by the ALJ in concluding that there was no "significant evidence" in the record that behaviors like those noted at the hearing "were routinely documented within the record." [AR at 25.]

The numerous details from Weidner's Northeastern Center treatment that the ALJ cites throughout the decision clearly demonstrate that the "line of evidence" Weidner

7

now cites was carefully considered.  The ALJ summarized the impact of the evidence this way:

> The record tends to suggest that while the claimant's mental impairments were medically documented over two years, the claimant was fairly stable throughout the period at issue in this decision, and it does not appear that her condition significantly worsened since she stopped working.  The medical evidence of record does not tend to reflect significant clinical findings over multiple examinations.

AR at 19.  This last observation is particularly significant.  As is true of virtually every claimant for Social Security disability benefits, Elizabeth Weidner has real health challenges.  But "having been diagnosed with these impairments does not mean they imposed particular restrictions on her ability to work."  *Weaver v. Berryhill*, 746 Fed.Appx. 574, 578-79 (7th Cir. 2018).

To qualify for benefits, Weidner bears the burden "to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."  *Id*. at 579.  Weidner does not cite to professional opinions or conclusions from Northeastern Center concerning functional limitations pertinent to her ability to maintain employment.   This discussion demonstrates that Weidner wrongly contends that the ALJ ignored evidence of meaningful limitations or lines of supporting evidence.  Instead, it appears that Weidner urges me to reweigh the evidence that was carefully described and considered by the ALJ, something that is beyond the role of judicial review.  *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

## Conclusion

8

The scope of judicial review is limited.  I find that the ALJ sufficiently articulated his findings and conclusions to permit meaningful judicial review, so that a remand is not warranted for lack of explanation. Beyond that, my role is not to determine whether the plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Hawkins v. Saul*, 2019 WL 6492491, at *1 (7th Cir. Dec. 3, 2019).  Applying these standards, I will affirm the denial of disability benefits.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Elizabeth Weidner's application for social security disability benefits is AFFIRMED.  The Clerk shall enter judgment in favor of defendant Commissioner and against plaintiff.

**SO ORDERED**.

ENTERED:  July 30, 2020.

    /s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**